UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD DRAUGHN,                              Case No. 15-14446

     Plaintiff                              Gershwin A. Drain
v.                                           United States District Judge

MICHAEL BOUCHARD, *et al*,                   Stephanie Dawkins Davis
                                             United State Magistrate Judge

     Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTION FOR SUMMARY JUDGMENT (Dkt. 97)

## I.  PROCEDURAL HISTORY

Plaintiff filed this civil rights action arising from events that occurred while he was a pre-trial detainee in the custody of the Oakland County Jail.  (Dkt. 1). This matter was referred to the undersigned for all pretrial proceedings by District Judge Gershwin A. Drain.  (Dkt. 12, 22).  Currently pending before the Court is defendants' motion for summary judgment, which is fully briefed.  (Dkt. 97, 108-110).

A brief review of prior motion practice in this case is helpful to understand its current posture.   Defendant Michael Bouchard previously filed a motion to dismiss the complaint.  (Dkt. 28).  The undersigned recommended that the motion be denied in part and granted in part.  (Dkt. 65).  The Court made the following conclusions regarding the claims in plaintiff's complaint and against Bouchard:

1.     Exhaustion could not be decided based on the record before the Court (Dkt. 80, pp. 6-8);

2.     Plaintiff's policy/custom claims regarding jail conditions were not properly pleaded and thus, were dismissed without prejudice (Dkt. 80, pp. 8-9);

3.     Plaintiff's individual capacity claims against Bouchard were dismissed (Dkt. 80, pp. 9-11);

4.     Plaintiff's policy claim against Bouchard regarding denial of pain medications was not dismissed and is the only remaining claim against him (Dkt. 80, p. 13).

In his initial complaint, plaintiff identified a "John Doe Doctor" and a "Jane Doe Nurse." (Dkt. 1). Later, plaintiff identified these individuals as Doctor Durocher and V. Warner, and requested service. (Dkt. 16). These defendants were served and counsel appeared for them. (Dkt. 54-57). Defendants Durocher and Warner then filed a motion for more definite statement, asserting that there were no specific allegations in the complaint against them. (Dkt. 60). In response, plaintiff asserted that there was no ambiguity in the complaint: the John Doe Doctor is Dr. Durocher and the Jane Doe Nurse is Nurse Warner. (Dkt. 63). In considering this motion, the undersigned concluded that while it was perhaps not strictly necessary for plaintiff to amend his complaint to specify that "Doctor John Doe" is Durocher and "Nursing Supervisor Jane Doe" is Warner, in order to bring

clarity to the record, the motion was granted.  (Dkt. 92, p. 6).  The Order specified that plaintiff was required to file an amended complaint "removing references to 'Doctor John Doe' and 'Nursing Supervisor Jane Doe' and instead, must refer to defendants Durocher and Warner, as applicable."  *Id.*  This Order was affirmed over plaintiff's objections and Judge Drain ordered that plaintiff's amended complaint "must comply with the terms of Magistrate Judge Davis's order."  (Dkt. 94, p. 9).

Plaintiff filed his amended complaint on August 7, 2017.  (Dkt. 96).  As explained in defendants' motion for summary judgment, the scope of the allegations in plaintiff's amended complaint far exceed that which was permitted by the Court's Order.  The Court has already determined that plaintiff was not permitted to supplement his complaint to include events that occurred after the incidents described in the original complaint, which occurred between November 8, 2015 (the date of his arrest) and December 11, 2015.  (Dkt. 105, p. 7 n. 3). Thus, those allegations involving treatment or actions taken by defendants after December 11, 2015, will not be considered for purposes of defendants' motion for summary judgment and plaintiff's factual allegations and claims will be limited to what was contained in his original complaint.[1]  (*See e.g.*, Dkt. 96, ¶¶ 27-35).

---

[1] In addition, plaintiff attempts to bring a retaliation claim in his amended complaint. (Dkt. 96).  While plaintiff mentions the words "First Amendment" in his original complaint, it

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II.    FACTUAL BACKGROUND

Plaintiff arrived at the Oakland County Jail (OCJ) on November 11, 2015. (Dkt. 1, p. 4).  On that day, plaintiff says he "informed several deputies that he was ill and hadn't taken his prescribed medication in over 3-days..." (Dkt. 1, pp. 4-5). According to plaintiff, the officers he spoke to told him to send a "kite" to health care once moved from "the holding cell/bullpin [sic] to an upstairs cell..." (Dkt. 1, p. 5).  While in this area, plaintiff stated that he was "forced to sleep on the concrete floor for 2-3 additional days." (Dkt. 1, p. 4).  On November 14, 2015, plaintiff claimed he moved to the upstairs housing area of the jail.  (Dkt. 1, p. 5). He further claimed that he told deputies at this time that he "was in terrible pain" and that he had not "received [his] medication for [his] illnesses for almost a week." (Dkt. 1, p. 5).  The next day, on November 15, 2015, plaintiff claimed that while in health care, an unnamed nurse, Jane Doe, who has now been identified as defendant Warner,[2] told him that he could not receive the medication he wanted

---

contains no cognizable claim for First Amendment retaliation.  (Dkt. 1, pp. 1, 7).  Plaintiff was not given permission to add a retaliation claim and any such claim will not be considered further.

[2] Vicki Warren, R.N., has been employed as the Health Service Administrator at the Oakland County Jail since January 2015.  (Dkt. 97-4, Ex. D, ¶ 2).  It appears that Ms. Warren is employed by Correct Care Solutions (CCS), not the OCJ.  (Dkt. 109, p. 4, n. 1).

due to a "general across the board ban on those prescribed medications." (Dkt. 1, pp. 5-6). Plaintiff did not identify the medications in his complaint. Plaintiff then alleged that he went to the health care clinic again on December 11, 2015 and saw a doctor, who has now been identified as Dr. Durocher,[3] whom he claimed also told him that there was a "policy forbidding any of the medications that was [sic] prescribed by [his] physician." (Dkt. 1, p. 6). Plaintiff alleges that Sheriff Bouchard is responsible for this policy. (Dkt. 1, p. 7).

As set forth above, plaintiff filed an Amended Complaint, pursuant to the Court's order, which clarified his claims against defendants Durocher and Warren. (Dkt. 96, ¶¶ 23-24). Plaintiff now alleges that on November 15, 2015, after being called to the "jail healthcare station" Ms. Warren informed him that he "could not be given [his] pain medications (i.e. Norco) because the Jail had a general ban on those prescribed medications." (Dkt. 96, ¶ 23). Next, he claims that on December 11, 2015, Dr. Durocher informed him that "the [c]orporation in which contracted the medical services had a policy forbidding any of the medications that were prescribed." (Dkt. 96, ¶ 23).[4]

---

[3] Dr. Philip Durocher has been employed as the Oakland County Jail Medical Director since 2001. (Dkt. 97-2, Ex. A, ¶ 2). It appears that Dr. Durocher is employed by Correct Care Solutions (CCS), not the OCJ. (Dkt. 109, p. 4, n. 1).

[4] The undersigned agrees with defendants that any additional allegations against defendants Warren and Durocher in the Amended Complaint fall well outside the scope of the permitted amendment. (Dkt. 105, p.7, n. 3)

Having now conducted discovery, defendants provide an extensive account of the medical care plaintiff received while housed at OCJ.  While much of this factual development occurred after the time frame set forth in the complaint or does not involve conduct by Dr. Durocher or Nurse Warren, the care provided to plaintiff during the period between November 11, 2015 and December 11, 2015, nevertheless provides context for the claims in plaintiff's complaint.  After arriving at OCJ, nurse A. Stephens evaluated plaintiff.  (Dkt. 100, Ex. A, pp. 1-6).[5]  During this visit, plaintiff advised that he had been taking "Norco" for pain and that he suffered from hypertension and an irregular heartbeat.  *Id*. at 1.  Ms. Stephens called Rite Aid to confirm plaintiff's prescriptions and ordered that plaintiff's blood pressure be monitored twice per week for two weeks.  She also provided plaintiff with a clinical opiate withdrawal assessment due to his use of narcotic pain medication prior to incarceration.  *Id*. at 1-6.  The results of plaintiff's withdrawal assessment indicated that plaintiff only required a routine intervention and monitoring.  *Id*. at 2-6.  Ms. Stephens instructed plaintiff to contact medical staff if his symptoms happened to reoccur.  *Id*.

On November 12, 2015, plaintiff submitted a health service request, complaining that he had not received any prescription pain medication and was in pain.  *Id*. at 7.  Rachel Reis, R.N., saw plaintiff the following day.  *Id*. at 8-10.

---

[5] Defendants have identified "A. Stephens" as "Alishea Stephens L.P.N."

During this visit, Ms. Reis evaluated plaintiff for musculoskeletal issues related to his complaints of pain in his lower back and osteoarthritis in his knees. *Id*. Ms. Reis noted that plaintiff's pain was non-emergent, gave him Motrin, ordered plaintiff a lower-level bunk, and instructed him on back and neck stretches for his pain. *Id*. Ms. Reis also scheduled plaintiff for the Patient Pathways Program for evaluation and treatment of chronic pain with an appointment date of on or about December 10, 2015. *Id*. at 10.

According to defendants, OCJ delegates the treatment of patients suffering from chronic, non-cancerous pain to CCS' standardized Pain Pathways program.[6] As explained by Dr. Durocher in his affidavit, the Pain Pathways program is a

---

[6] In his response brief, plaintiff asserts that the Court ordered defendant Bouchard to produce copies of all policies governing the distribution of pain medications at OCJ. Yet, a copy of the Pain Pathways program was not produced. (Dkt. 108, pp. 15-17). Plaintiff maintains that "defendants' attorneys" are deliberately evading discovery. Plaintiff does not indicate what the result of such an omission should be, other than the motion for summary judgment should be denied. The request at issue, directed to Bouchard only, asked "How is medication distributed at Oakland County Jail?" (Dkt. 105, p. 10, quoting plaintiff's Interrogatory No. 14). While the Court noted that the interrogatory was imperfectly drafted, Bouchard was nonetheless ordered to "describe all policies and procedures (and/or produce any written policies or procedures) pertaining to the distribution of prescription drugs to inmates at the Oakland County Jail." (Dkt. 105, p. 10). It appears undisputed that the Pain Pathways program was neither described nor a copy produced (if there is a written policy). From Dr. Durocher's description of the Pain Pathways program, it is a policy that governs the treatment of non-cancerous chronic pain, which may involve, of course, prescribing drugs of various types to inmates. Interrogatory No. 14 was a discovery request directed to defendant Bouchard only and while the Pain Pathways program was implement at OCJ, it was clearly a policy of CCS. Yet, the policy arguably falls within the scope of the request at issue. While it is somewhat ambiguous whether the Pain Pathways policy falls within the scope of plaintiff's request, the undersigned finds that any failure to comply with the Court's order is harmless because, as discussed *infra*, plaintiff's policy claims fail as a matter of law.

multi-step program implemented at OCJ to standardize the treatment for patients suffering from chronic, non-cancerous pain. (Dkt. 97-2, Ex. B, ¶ 5). Before patients are placed in the Pain Pathways program, they are first treated with nonpharmacological interventions. If this treatment does not work, patients are then evaluated for the Pain Pathways Program and begin treatment at the first step. *Id*. at ¶ 6. At the first step, patients are treated with Selective COX-2 inhibitors which are a type of non-steroidal anti-inflammatory class of drugs which may include naproxen or meloxicam. If after completing the first step the patient fails to show signs of improvement, the patient moves on to the second step. *Id*. at ¶ 7. At step two, patients are treated with an antidepressant medication such as amitriptyline. *Id*. at ¶ 8. If the second step fails to improve the patient's chronic pain, the patient is then treated with a serotonin–norepinephrine reuptake inhibitor such as venlafaxine at step three. *Id*. at ¶ 9. If the third step fails, the patient is then treated with an antiepileptic drug such as gabapentin or carbamazepine. *Id*. at ¶ 10. The next step requires that the patient be treated with a combination of any of the foregoing drugs. *Id*. at ¶ 11. If the patient's chronic pain is still unresolved, the patient's DIRE[7] score will be determined. A patient's DIRE score predicts which chronic noncancerous pain patients will have effective analgesia and be

---

[7] "DIRE" stands for Diagnosis, Intractability, Risk, and Efficacy. *See e.g.*, http://www.emergingsolutionsinpain.com/content/tools/esp_9_instruments/pdf/DIRE_Score.pdf

compliant with long-term opioid maintenance treatment. *Id*. at ¶ 12. If the patient's DIRE score warrants long-term use of opioids for chronic pain, then the patient will be prescribed some form of opiate pain medication. *Id*. at ¶ 13.

Karen Delbeke, N.P., treated plaintiff on November 20, 2015. (Dkt. 100, Ex. A, pp. 11-15). Ms. Delbeke evaluated plaintiff for the Hypertension/C.A.D. Chronic Care program, where she performed a baseline EKG, weighed plaintiff, and ordered his blood pressure to be checked twice weekly. *Id*. On November 30, 2015, Kristin Work N.P., evaluated the plaintiff for subjective complaints of "chronic pain." *Id*. at 14. Despite plaintiff's complaints of pain, Ms. Work observed that plaintiff presented with an "even" and "steady gait" and did not have any "difficulty getting on and off [the] exam table." *Id*. Nonetheless, Ms. Work provided plaintiff with Motrin and ordered a follow-up appointment on or about December 10, 2015, to be evaluated for the Pain Pathways Program for his chronic pain. *Id*.

On December 11, 2015, Dr. Durocher evaluated and treated plaintiff pursuant to the Pain Pathways program. (Dkt. 100, Ex. A, pp. 16-18; Dkt. 97-2, Ex. B, ¶¶ 4-19). During this visit, plaintiff complained of pain in his neck, left shoulder, left elbow, hips, knees, and feet. (Dkt. 100, Ex. A, p. 16). During this visit, plaintiff completed two surveys regarding (1) the pain plaintiff was experiencing and (2) the impact of his pain on plaintiff's functional abilities. (Dkt.

100, Ex. A, pp. 17-18; Dkt. 97-2, Ex. B, ¶¶ 14-19).  In the functional ability survey, plaintiff rated how his condition impacted seven different categories of his daily life activities on a scale from 0-10.  *Id*.  In this survey, a score of 0 indicated that his condition was not disabling, while a score of 10 signified that "all of the activities in which [Plaintiff] would normally be involved have been totally disrupted or prevented by [his] pain."  *Id*.  In the category of self-care (activities associated with personal maintenance and independent daily living such as bathing, driving, or getting dressed), plaintiff rated the impact to be a 4.  *Id*.  In the category of "life-support" (activities which support basic life behavior such as eating, sleeping, and breathing), plaintiff rated the impact to be a 3.  Dr. Durocher examined plaintiff's skin, heart, head, eyes, ears, nose, throat, lungs, and extremities; all findings were unremarkable and within normal limits.  *Id*. at 16.  Accordingly, Dr. Durocher provided plaintiff with a prescription for Naprosyn and ordered a follow-up appointment in three months.  *Id*. [8]

---

[8] Defendants also offer evidence concerning treatment provided to plaintiff after December 11, 2015 in relation to the progressive care provided under the Pain Pathways program which is relevant to the extent that it demonstrates follow-through on the December 11 plan to see plaintiff again in three months.  Beyond addressing that point, however, as discussed earlier, care during that time period falls outside of the scope of plaintiff's complaint.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find

for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate

the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477

U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving

party.  *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute

about a material fact, that is, if the evidence in the case "is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

Such a determination requires that the Court "view the evidence presented through

the prism of the substantive evidentiary burden" applicable to the case.  *Id*. at 254.

Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of

the evidence, on a motion for summary judgment the Court must determine

whether a jury could reasonably find that the plaintiff's factual contentions are true

by a preponderance of the evidence.  *See id.* at 252-53.  Finally, if the nonmoving

party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

      B.    Exhaustion of Administrative Remedies

        1.    Legal Standard

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to

exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative

defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies.

        2.     Analysis

By way of background, defendant Bouchard previously filed a motion to dismiss the complaint based in part on plaintiff's alleged failure to exhaust his administrative remedies.  (Dkt. 23).  This motion to dismiss was withdrawn and then refiled.  (Dkts. 27, 28).  Attached to each motion to dismiss was an exhibit purported to be plaintiff's grievance records while he was housed at OCJ.  (Dkt. 23-3, Ex. C; Dkt. 28-3, Ex. C).  In a report and recommendation dated February 15, 2017, the undersigned recommended that defendant's motion to dismiss based on exhaustion be denied, determining that such an issue had to be decided under Rule 56, rather than Rule 12(b)(6) and because defendant Bouchard had not

addressed the *Ross v. Blake*[9] issues raised by plaintiff in response.  (Dkt. 65, pp.

10-13).  Defendants have now moved under Rule 56, again claiming that plaintiff

failed to exhaust his administrative remedies.

In his complaint, plaintiff alleges that, while at OCJ, he "filed numerous

grievances," all of which were either ignored or "destroyed by jail staff."  (Dkt. 1,

p. 6).  According to defendants, a review of plaintiff's "complete Oakland County

Jail grievance history shows how Plaintiff's claim is demonstrably false."  (Dkt.

97, p. 19).  Plaintiff filed this case in federal court on December 17, 2015 and

according to defendants, he submitted a total of two grievances regarding three

issues, receiving responses on the merits for both grievances.  (Dkt. 97, p. 19,

citing Dkt. 23-3).  Defendants contend that while plaintiff exhausted these two

grievances, neither of these grievances relate to any of the issues mentioned in

plaintiff's complaint.  *Id*.  Defendants also point out that plaintiff filed several

grievances relating to health care issues well after the complaint was filed.  (Dkt.

97, pp. 21-22, citing Dkt. 23-3).

---

[9] In *Ross v. Blake*, 136 S.Ct. 1850, 1858-60 (2016), the Supreme Court concluded that if
the prisoner is effectively barred from pursuing a remedy by policy or by the interference of
officials, the grievance process is not available, and exhaustion is not required: "an
administrative scheme might be so opaque that it becomes, practically speaking, incapable of
use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it.  And
finally, a grievance process is rendered unavailable when prison administrators thwart inmates
from taking advantage of it through machination, misrepresentation, or intimidation."

The undersigned concludes that defendants have not met their burden of proof on the affirmative defense of exhaustion of administrative remedies. While defendants purport to provide the Court with plaintiff's entire grievance history, they provide no accompanying affidavit or declaration certifying that the records are, in fact, plaintiff's complete grievance history from the relevant time frame. The Court is presented only with counsel's argument that this is so. (Dkt. 97, citing Dkt. 23-3, Ex. C; Dkt. 28-3, Ex. C). This is insufficient to meet defendants' burden of proof on the affirmative defense of exhaustion. *Prather v. Corr. Care Sols.*, 2016 WL 7175629, at *2 (W.D. Ky. Dec. 7, 2016) ("[Defendant] has not met his burden. He has not attached any affidavit to his motion showing that Plaintiff failed to file a grievance related to the matters at hand or produced a copy of the relevant grievance procedure."); *Balcar v. Kessinger*, 2017 WL 693283, at *4 (W.D. Ky. Feb. 21, 2017) ("Defendant … has not met her burden of establishing that Plaintiff failed to exhaust his available administrative remedies. She has not attached any affidavit to her motion showing that Plaintiff failed to file a grievance related to the matters at hand or produced a copy of the relevant grievance procedure."). In the view of the undersigned, defendants have not met their burden of showing that plaintiff failed to exhaust his administrative remedies. Given this essential failure of proof, the Court need not address whether there is a question of fact on the thwarting issue under *Ross*. However, for the reasons set forth below,

the undersigned concludes that defendants are nonetheless entitled to summary judgment on the merits of their claims.

      C.    <u>Eighth Amendment Claims against Durocher and Warren</u>

      1.    Legal Standards

In this case, plaintiff was a pretrial detainee during the time he was at the Oakland County Jail.  Thus, the applicable constitutional provision is the Due Process Clause of the Fourteenth Amendment (rather than the Eighth Amendment). *See Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002).  Nevertheless, the Eighth Amendment's protection against cruel and unusual punishment extends to pretrial detainees through the Fourteenth Amendment's Due Process Clause, *Whitley v. Albers*, 475 U.S. 312, 327 (1986) and thus claims by pretrial detainees challenging conditions of confinement are analyzed under the Eighth Amendment.  *See Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *see also Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494-95 (6th Cir. 2008) (asserting that the same deliberate-indifference inquiry applies under the Fourteenth Amendment as under the Eighth Amendment).

In the context of medical care, a prisoner or pre-trial detainee's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  "Where a prisoner

has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted).  Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.  A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834.  Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to

medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.  A plaintiff can demonstrate that a medical need is sufficiently serious by showing that it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2005) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)); *see also*, *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). Defendants do not dispute that plaintiff had a serious medical need and has thus satisfied the objective prong of the deliberate indifference test.[10]  They do, however, challenge his satisfaction of the subjective prong.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  To establish

---

[10]  In the reply, defendants mention plaintiff's failure to put "verifying medical evidence" in the record.  However, this requirement applies to the objective prong of the deliberate indifference standard and is relevant only to those claims "involving minor maladies or non-obvious complaints of a serious need for medical care."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004).  As noted, defendants did not challenge the objective prong in their opening brief.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs . . . do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.  Further the non-moving party ordinarily has no right to respond to the reply brief. . . . As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.") (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).  While plaintiff was given the opportunity to file a sur-reply in this case (Dkt. 110), the undersigned finds that to the extent that defendants attempt to raise any deficiency on the objective prong, it is so opaque that a *pro se* plaintiff would not be on notice of such an argument.  Thus, the undersigned will not consider any attempt by defendants, via the reply, to dispute the objective prong of the deliberate indifference standard.

the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* at 837.  In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-40).  "Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

### 2.   Deliberate Indifference - Dr. Durocher

Defendants argue that plaintiff's medical records while he was housed at OCJ do not demonstrate any indifference to plaintiff's serious medical need; rather, they actually show that Dr. Durocher (and others) treated plaintiff on numerous occasions; and at every instance, plaintiff's medical records show that he received appropriate care.  Specifically, defendants assert that Dr. Durocher provided proper treatment to plaintiff by (1) completing thorough physical examinations and assessments of his condition; (2) providing pain medication and other treatment based on plaintiff's subjective pain complaints, as well as the objective findings of plaintiff's conditions.  Taken together, defendants maintain

that plaintiff's records in no way support his claim that Dr. Durocher acted with deliberate indifference to plaintiff's serious medical needs. Rather, defendants argue that plaintiff's claim reflects a mere difference in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment, which is not enough to state a deliberate indifference claim. *Westlake*, 537 F.2d 857 at 860, n. 5 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

In response, plaintiff maintains that Dr. Durocher never performed an evaluation for the Pain Pathways program. Instead, a nurse just asked him general questions about the pain he had been experiencing since the denial of his medication. Plaintiff also claims that Dr. Durocher never conducted a physical examination on December 11, 2015, but merely ordered Naprosyn for him on that date, which was almost an entire month after he first complained about severe pain and being denied his medications. Plaintiff says Dr. Durocher does not address why he was forced to endure the denial of pain medications for a month or why he only ordered Naprosyn for plaintiff's herniated disc, existing bone disease, and torn Achilles tendon. Plaintiff also contends that Dr. Durocher did not provide any meaningful treatment because he never reviewed plaintiff's medical records, or

performed any x-rays, MRIs or other imaging to determine the extent of his injuries.  (Dkt. 21, citing Dkt. 85, p. 4).  Plaintiff maintains that it is grossly inhumane to attempt to treat plaintiff without first reviewing his records.  Plaintiff also alleges in his declaration that he filed "18 Requests for Medical Treatment" between November 11, 2015 and December 26, 2015, which were forwarded to Dr. Durocher.  (Dkt. 108, Pg ID 995, ¶¶ 4-5).  Plaintiff says he informed Dr. Durocher that he was not being given any of his prescribed pain and blood-pressure medications and that he was in severe pain and agony.  However, he says that Dr. Durocher refused to evaluate his complaints until December 12, 2015. *Id*.[11]

In the view of the undersigned, plaintiff has established dissatisfaction with the care he received, but he has not established a question of material fact as to whether Dr. Durocher was deliberately indifferent.  Rather, his claims against Dr. Durocher do not rise above mere negligence or a disagreement with the course of medical treatment.  "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment.  When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of

---

[11] Presumably, plaintiff means December 11, 2015, the date on which he was seen by Dr. Durocher.

incompetence which does not rise to the level of a constitutional violation." *See Comstock*, 273 F.3d at 703 (citing *Estelle*, 429 U.S. at 106); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Gabehart v. Chapleau*, 110 F.3d 63, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) ("Misdiagnoses, negligence, and malpractice are not, however, tantamount to deliberate indifference."). Here, the record shows that plaintiff's requests for treatment were not ignored. Nursing staff evaluated plaintiff for the Pain Pathways program and scheduled an appointment with Dr. Durocher. Plaintiff saw Dr. Durocher as scheduled on December 11, 2015. Plaintiff makes no allegation, nor is there any evidence in this record, that Dr. Durocher ignored any perceived medical need or substantial risk of harm at any time before December 11, 2015. Rather, at his very first visit with Dr. Durocher, the doctor prescribed an over-the-counter pain medication based on the exercise of his professional medical judgment regarding the appropriate course of treatment. Even if this decision was wrong or negligent, it does not show deliberate indifference to plaintiff's serious medical needs. Dr. Durocher provided treatment and medication, just not the medication or treatment plaintiff wanted. And while plaintiff argues that Dr. Durocher does not explain the one month delay in receiving Naprosyn (an over-the-counter pain medication given to plaintiff in December 2015), notably, prior to

24

seeing Dr. Durocher, plaintiff was given Motrin (a different over-the-counter pain reliever) by other medical staff on multiple occasions.  (Dkt. 100, Ex. A, pp. 10, 14).  That plaintiff disagrees with this course of treatment does not amount to deliberate indifference because it is well-settled that "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference  claim." *Christian v. Michigan Dep't of Corrs.–Health Servs*., 2013 WL 607783, at *5 (E.D. Mich. Jan. 28, 2013) (citation omitted), adopted by 2013 WL 607779 (E.D. Mich. Feb. 19, 2013); *see also Greenman v. Prison Health Servs*., 2011 WL 6130410, at *10 (W.D. Mich. Dec. 8, 2011) (granting summary judgment where "the record shows that defendant treated plaintiff's condition on an ongoing basis with appropriate medications.  Further, plaintiff's preference for narcotics and his dissatisfaction with the non-narcotic pain medications prescribed by [defendant] falls far short of supporting an Eighth Amendment claim.").

Plaintiff makes much of the fact that his personal physician prescribed Norco for his pain and Dr. Durocher did not do so.  However, it is not deliberately indifferent for a physician to disagree with a recommendation for pain medication by an outside doctor.  *Gora v. Gelabert*, 2011 WL 6781022, *12 (W.D. Mich. Dec. 2, 2011) (citing *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) ("Mere differences of opinion among medical personnel regarding a

patient's appropriate treatment do not give rise to deliberate indifference."). As the

court observed in *Douglas v. Stanwick*, 93 F.Supp.2d 320 (W.D.N.Y. 2000):

> Not every physician will treat every ailment in exactly
> the same manner. That does not mean that one of the
> physicians must be acting with deliberate indifference to
> the patient's needs. That is particularly true when one of
> the physicians is more familiar with the jail or prison
> environment, and therefore more sensitive to the need to
> restrict narcotics use.

*Gora*, at *12; *see also White v. Napoleon*, 897 F.2d 103, 110 (3rd Cir. 1990) ("If a

plaintiff's disagreement with a doctor's professional judgment does not state a

violation of the Eighth Amendment, then certainly no claim is stated when a doctor

disagrees with the professional judgment of another doctor. There may, for

example, be several acceptable ways to treat an illness."); *McCracken v. Jones*,

562 F.2d 22, 24 (10th Cir. 1977) (where a prisoner's private physician

recommended a course of treatment for the plaintiff's condition, a prison doctor's

use of a different treatment regimen did not amount to deliberate indifference for

purposes of an Eighth Amendment claim). Accordingly, plaintiff's assertion that

Dr. Durocher would not give him narcotic pain medication as a first course of

action even though it had been prescribed by his private physician is not a violation

of the Eighth Amendment.

Plaintiff's allegations that he sent 18 requests to Dr. Durocher requesting

care and they were ignored until December 11, 2015 are also unavailing. The

Eighth Amendment does not entitle an inmate "to demand specific care. [An inmate] is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Fasc. v. Chapel*, 468 F.2d 1072, 1076 (6th Cir. 1972) (finding that the Eighth Amendment does not require that every request for medical care made by prisoner be honored). Rather, as long as the treatment actually afforded an inmate squares with constitutional standards, he has no right to demand second opinions, a certain physician, or a particular treatment. *Estelle*, 429 U.S. at 106-07. Here, as noted above in detail, plaintiff was treated three other times during the four-week period between the time he entered OCJ and December 11, 2015, the date he first saw Dr. Durocher. Under the Eighth Amendment, plaintiff has no right to demand treatment at will or to demand that Dr. Durocher specifically provide treatment to him, as opposed to other medical personnel. *See Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010) ("[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.").

The undersigned also rejects plaintiff's attempt to impose a "should have known" theory on Dr. Durocher by citing several inapposite, out-of-circuit cases. In *Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir. 1996), as amended (Sept. 6, 1996), the court found a question of fact on a deliberate indifference claim where

psychotropic medications were discontinued:  In the Eleventh Circuit, "there exists a "clearly established right to have [one's] psychotropic medication continued if discontinuation would amount to grossly inadequate psychiatric care."  In *Steele*, the court concluded that accepting the plaintiff's description of the encounters with the physician, a jury could find that the discontinuation of psychotropic medications based on a "cursory" interview, without having reviewed any medical records except the treatment plan from the prior facility, could be deliberately indifferent.  The physician was aware that the reason the plaintiff was on psychotropic medications was because he was a suicide risk.

The present case is easily distinguished.  Dr. Durocher did not have a treatment plan from another facility where plaintiff was being medicated, nor did he suddenly cut off plaintiff's medications.  Rather, plaintiff was assessed by nursing staff about one month prior to seeing Dr. Durocher and determined not to present a high risk for withdrawal from his previously-prescribed Norco.  Nor is this a case where Dr. Durocher had a treatment plan from another facility that should have prompted him, as was the case in *Steele*, to inquire further about plaintiff's medication needs.  And, there is nothing in this record that suggests the discontinuation of plaintiff's narcotic medication rose to the level of grossly inadequate care.  He was assessed as low risk for withdrawal symptoms and was monitored by medical staff.  Notably, plaintiff does not point to any evidence

suggesting he suffered from any withdrawal symptoms.  Thus, this case is inapposite.

Plaintiff also relies on *Andrews v. Ferguson*, 2010 WL 3853070, at *11 (W.D. Ark. Aug. 30, 2010), report and recommendation adopted, 2010 WL 3843769 (W.D. Ark. Sept. 27, 2010) for the proposition that the failure to obtain information about a prisoner's prior treatment can constitute deliberate indifference.  In *Andrews*, not only did the medical personnel not obtain prior treatment records to see if the plaintiff's primary care physician had developed a treatment plan, there was no indication that any other pain medications, narcotic or otherwise, were ever considered, despite the plaintiff's complaints of ongoing pain for which his current medication was not adequate.  In this case, Dr. Durocher, assessed plaintiff under the Pain Pathways program and determined that Naprosyn was an appropriate first step for the treatment of plaintiff's pain.  *Andrews* does not suggest that a failure to prescribe narcotics as the first course of action for chronic pain is deliberately indifferent.  Thus, *Andrews*, in addition to being an unpublished, out-of-circuit case, is entirely distinguishable.

Similarly, the present circumstances are readily distinguishable from those in *Mace v. Johnson*, 2014 WL 538580, at *4 (D. Minn. Feb. 11, 2014), another unpublished, out-of-circuit decision relied on by plaintiff.  In *Mace*, the plaintiff was noted to be taking two types of narcotic medications on intake in the jail,

amongst other pain medications.  Because pills were missing based on his

prescriptions, health care personnel were concerned that he was taking more than

the prescribed amount or selling the pills.  They determined that he should be taken

off one narcotic, but not both, because of a greater risk of side effects.  The

plaintiff was monitored for signs of withdrawal.  He alleged that he suffered from

withdrawal the following day and ultimately tried to commit suicide one week

later.  The plaintiff alleged that the physician who discontinued his OxyContin

without viewing his prior medical records or taking other measures to assess his

medical condition beyond a phone call with a nurse, was deliberately indifferent.

In *Mace*, the court concluded that a reasonable jury could conclude that the

decision to discontinue the OxyContin was deliberately indifferent because the

physician made the decision to discontinue the OxyContin based solely on what he

learned from a telephone call with the nurse.

In the view of the undersigned, *Mace* is unlike the present circumstance.

There is no evidence that Dr. Durocher made any decision to discontinue plaintiff's

Norco or made any treatment decisions without adequate clinical or historical

information.[12]  Rather, nursing staff screened plaintiff for his pain complaints and

---

[12]  While plaintiff chastises defendants' counsel for not providing the medical records from his private physician to the Court with their summary judgment motion, plaintiff had an equal opportunity to provide them with his response to the motion for summary judgment if he believed they supported his claims.  As it stands, they are not before the Court, thus rendering the possibility that they might have supported plaintiff's claim that there is a question of fact immaterial.

he was determined to not be at high risk for withdrawal from his previously-prescribed Norco.  Plaintiff saw nursing staff for treatment of his pain on multiple occasions before he first saw Dr. Durocher one month after his initial intake.  And again, unlike in *Mace*, plaintiff does not point to any evidence suggesting he suffered from any withdrawal symptoms.  Accordingly, the undersigned not does find *Mace* persuasive.

In the view of the undersigned, the facts of this case fall squarely within the scope of a mere disagreement in the course of medical treatment, which does not rise to the level of deliberate indifference.  Accordingly, plaintiff has not established a genuine issue of material fact that Dr. Durocher was deliberately indifferent and Dr. Durocher is entitled to summary judgment.

3.      Deliberate Indifference - Ms. Warren

Ms. Warren is the Health Service Administrator at the Oakland County Jail, and is responsible for overseeing and managing inmate healthcare at the jail. (Dkt. 97-4, Ex. D, ¶ 3).  Ms. Warren does not generally provide medical care to the inmates at the jail.  *Id.*  Moreover, she says she never met the plaintiff, nor had any involvement with him, other than responding to one of his written grievances.  *Id.* ¶¶ 4-6).  Ms. Warren says that she was not the individual who interacted with plaintiff on November 15, 2015, as alleged in the Complaint, and she did not ever inform plaintiff that there was an "across the board" policy against providing

narcotic pain medication; because this statement is not true.  Ms. Warren asserts

she was unaware of any medical need that plaintiff had and was not involved in his

medical care—nor was she asked to be.  *Id*.  Thus, defendants argue that summary

judgment in favor of Ms. Warren is appropriate, because there is no evidence to

support that she was aware of a serious medical need and disregarded it.  *Wilson v.*

*Seiter*, 501 U.S. 294, 300 (1991); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.

1999).

In response, plaintiff says that his complaint and affidavit refute Warren's

assertions and establish that he she did tell him that he would not receive the pain

medication based on OCJ's policy.  Plaintiff also says that Warren's admission that

she was responsible for overseeing and managing plaintiff's treatment makes her

involvement clear and her claims of ignorance untenable.  Plaintiff argues that,

given her duty to oversee and schedule treatment for plaintiff's medical conditions,

which were ignored from November 11, 2015 to December 11, 2015 despite his

numerous complaints, her inaction constitutes a blatant disregard of his pain and

suffering.  Just as with Dr. Durocher, plaintiff alleges in his declaration that he

filed "18 Requests for Medical Treatment" between November 11, 2015 and

December 26, 2015, which were forwarded to Warren.  (Dkt. 108, Pg ID 995, ¶¶ 4-

5).  Plaintiff says he informed Warren that he was not being given any of his

prescribed pain and blood-pressure medications and that he was in severe pain and

agony.  However, he says that Warren refused to evaluate his complaints until

December 12, 2015.  *Id.* [13]

To the extent that Warren reviewed grievances or other requests for medical

care, the undersigned concludes that plaintiff has marshaled no evidence

suggesting that she ignored a substantial risk of harm to plaintiff.  It is generally

true that where a defendant's "only role[] ... involve[s] the denial of administrative

grievances or the failure to act ... [he or she] cannot be liable under § 1983."

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Skinner v. Govorchin*, 463

F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's

denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v.*

*Mich. Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004) ("Section 1983 liability

may not be imposed simply because a defendant denied an administrative

grievance or failed to act based upon information contained in a grievance.");

*Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) ("The denial of a

grievance is not the same as the denial of a request to receive medical care.").

However, if a defendant is a medical professional reviewing a recommendation for

care made by other medical professionals, the result may be different.  *See e.g*.,

*Titlow v. Correctional Med. Servs.*, 2008 WL 2697306, *12 (E.D. Mich. 2008)

---

[13] Again, presumably, plaintiff means December 11, 2015, the date on which he was seen by Dr. Durocher.

("However, [the] *Shehee* defendants were not medical professionals reviewing the recommendations of other medical professionals."). As explained in *Calhoun v. Hill*, 2008 WL 4277171, at *7 (E.D. Mich. Sept. 17, 2008) (Lawson, J.), although the failure to remedy retaliatory behavior is not a constitutional violation in itself, an official who "knows of and disregards an excessive risk to inmate health or safety" may be liable under the Eighth Amendment. *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In *Calhoun*, Judge Lawson concluded that "one who rejects a grievance conceivably could qualify, under some set of circumstances, as deliberately indifferent" and that "[t]here is no case that exempts a prison official who was deliberately indifferent to a serious medical need from liability simply because he occupies the position of supervisor or grievance respondent." *Id*. at *7 (*see also Edwards v. Jenkins*, 2014 WL 1746123, at *3 (E.D. Mich. Apr. 30, 2014) (Borman, J.) (citing *Calhoun*)).

Plaintiff brings forth no evidence, however, that by virtue of Warren's review of any grievance or her supervisory capacity over medical care generally, she personally perceived a risk of substantial risk of harm to plaintiff and ignored it. The crux of plaintiff's claim is that Warren told him that there was a policy that narcotic medications would not be provided at OCJ under any circumstances. While there is a factual dispute as to whether Warren made this statement, the undersigned concludes that it is not a material dispute of fact such that summary

judgment must be denied.  Viewing the facts in the light most favorable to

plaintiff, even if Warren made such a statement, the mere fact that plaintiff was not

receiving narcotic medications as prescribed by his private physician, does not, by

itself, suggest an unreasonable risk of harm, as discussed in great detail above.

Again, plaintiff is not entitled to receive medical care at will nor is he entitled to

treatment by a particular medical provider, including Nurse Warren.  As set forth

above, plaintiff received medical care on multiple occasions during the period he

claims that Warren "ignored" his requests for medical care.  His receipt of such

care belies his claim for deliberate indifference.  Plaintiff alleges no other facts

suggesting that Warren ignored any substantial risk of harm to him.  Based on the

foregoing, plaintiff has failed to create a genuine issue of material fact on his

Eighth Amendment claim against Warren and she is entitled to summary judgment.

> D.   Official Capacity Claims against Bouchard, Warren, and Durocher

Plaintiff brings official capacity claims against all three defendants.  A

lawsuit against a county sheriff in his or her official capacity "is nothing more than

a suit against" the county itself. *Nallani v. Wayne Cty*., 2016 WL 7241400, at *11

(6th Cir. Dec. 15, 2016) (quoting *Petty v. Cty. of Franklin*, 478 F.3d 341, 349 (6th

Cir. 2007)).  Official capacity suits brought under § 1983 "'generally represent

only another way of pleading an action against an entity of which an officer is an

agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dep't*

*of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Graham*, 473 U.S. at 166.  Unlike individual capacity claims, "official capacity claims do not falter on a defendant's lack of personal involvement."  *Alame v. Smetka*, 2009 WL 236073, at *5 (E.D. Mich. Jan. 29, 2009) (citing *Graham,* 473 U.S. at 165-66; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989)).  A governmental entity is liable under § 1983 when "the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  *Id.* (internal citations omitted).

Defendants Durocher and Warren are employed by a company called Correct Care Solutions (CCS).  (Dkt. 109, p. 4, n. 1).  A suit against these defendants in their official capacities under § 1983 is a suit alleging that an official policy or custom of the corporation (here, CCS) caused an alleged deprivation of a federal right.  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996); *Starcher v. Corr. Med. Sys., Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. 2001).  A plaintiff who sues a private or public corporation for constitutional violations under 42 U.S.C. § 1983 must establish that a policy or custom caused the alleged injury.  *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at

818.  The Sixth Circuit has held that like a municipal corporation, "[CMS's]

liability must also be premised on some policy that caused a deprivation of [a

prisoner's] Eighth Amendment rights."  *Starcher v. Corr. Med. Sys.*, *Inc.*, 7 Fed.

Appx. 459, 465 (6th Cir. 2001).  Liability may be premised on the existence of an

express policy adopted by the appropriate authorities, or on the existence of a

custom.  *See Hamer v. Cnty. of Kent*, 2013 WL 8479414, at *2 (W.D. Mich. Nov.

6, 2013), *adopted by* 2014 WL 1276563 (W.D. Mich. Mar. 27, 2014).

If there no underlying constitutional violation, then there can be no *Monell*

liability.  As the court explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 767 (2009),

there is no vicarious or *respondeat superior* liability under § 1983.  Thus, for

example, in the context of a municipality, a plaintiff cannot establish the

municipality's liability unless he shows that "deliberate action attributable to the

municipality directly caused a deprivation of federal rights."  *Board of County*

*Comm. v. Brown*, 520 U.S. 397, 415 (1997).   Rather, in the context of a claim

against a municipality, a plaintiff must establish both (1) an underlying violation of

his constitutional rights, and (2) that the violation resulted from the municipality's

own deliberately indifferent policies.  *See Collins v. City of  Harker Height*s, 503

U.S. 115, 120 (1992) (explaining that "proper analysis requires us to separate two

different issues when a § 1983 claim is asserted against a municipality: (1) whether

plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the

city is responsible for that violation."); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point."); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Nallani v. Wayne County*, 2015 WL 6795945 (E.D. Mich. Nov. 6, 2015) (dismissing defendant Wayne County because plaintiff failed to establish a constitutional violation by the individual defendants)).  As set forth above, plaintiff has not established that any individual defendant violated his constitutional rights.  Accordingly, his policy claims too must fail.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 24, 2018                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>August 24, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I have mailed by U.S. Postal Service to the following non-ECF participant: <u>Ronald Draughn #182621, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov